ROLAND L. BELSOME, Judge.
|) This appeal is taken from the trial court’s award of damages for injuries sustained by Enrique Madrid. Mr. Madrid *899 seeks an increase in general damages as well as the reimbursement of medical expenses.

Facts

Mr. Madrid was injured while working on the deck of the vessel M/V Douglas. While Mr. Madrid was standing on the vessel’s starboard walkway, an employee of Eagle Control Systems, Inc. was working on the vessel’s water system. In the course of the repair, the water systems air tank’s bladder ruptured. Mr. Madrid’s reaction to the explosion caused him to fall backward approximately fourteen feet and land on his back on the dry dock. As a result of the fall, Mr. Madrid suffered a fractured T8 vertebrae, torn meniscus in his knee, a separated shoulder, and an aggravation of a pre-existing, asymptomatic spondylolysthesis at the L5-S1 level of the spine.
After a bench trial, the repairman’s employer, Eagle Control, was found to be 100% at fault for Mr. Madrid’s injuries. The trial court issued a judgment and after granting a motion for new trial issued an amended judgment. The amended judgment awarded damages as follows:
RMedical expenses 27,159.25
Lost wages 41,553.00
Past pain and suffering, mental anguish, and loss of enjoyment of life 75,000.00
Future pain and suffering, mental anguish, And loss of enjoyment of life 25,000.00

Assignments of Error

On appeal, Mr. Madrid assigns two assignments of error: 1) the trial court abused its discretion in only awarding $100,000.00 in general damages; and 2) the trial court erred by not awarding full sum of medical expenses. Eagle Control has not appealed the issue of liability.

First Assignment of Error

For appellate courts, the standard of review to be applied to a general damages award is the abuse of discretion standard. Waimuright v. Fontenot.[1] Our role as an appellate court is to review the exercise of discretion by the trier of fact.[2] The trial court’s assessment of the appropriate amount of damages is a finding of fact to which appellate courts give great deference on review.[3] If a review of the facts reveals an abuse of discretion, this Court will then review prior similar awards to determine the lowest reasonable award within the trial court’s discretion.[4]
IsThe medical evidence in this case went completely uncontested. Mr. Madrid, only twenty-nine at the time of the incident, sustained- multiple injuries due his fall. His injuries were so substantial that he was out of work for an entire year. A further result of the injuries is that Mr. Madrid has a life-long physical impairment. His treating physician, Dr. Robert Shackleton, testified at trial regarding Mr. Madrid’s past medical treatment as well as his future pain and suffering diagnosis.
Mr. Madrid’s burst fracture in his spine is inoperable and caused him to wear a back brace around the clock for approximately six months. During the time that he was required to wear the back brace, Mr. Madrid had surgery to repair the torn *900 medial meniscus in his knee. The surgery required him to use crutches for approximately three weeks while wearing the back brace. He testified that using the crutches with the back brace caused additional pain. This was a painful and ongoing injury and required significant physical therapy,
Additionally, Mr. Madrid hurt his shoulder in the fall. Dr. Shackleton identified the location of the injury as the AC joint, where the collar bone meets the shoulder blade. Dr. Shackleton testified that there was not much that could be done for the shoulder injury and Mr. Madrid reported feeling some relief after two or three months. Mr. Madrid, did however, testify that periodically he still feels pain in his shoulder. Even though Dr. Shackleton found that Mr. Madrid’s spondylolysthesis at the L5-S1 level of the spine was a preexisting condition, it was a condition that was asymptomatic prior to the fall. The fall aggravated the condition and it is now symptomatic and causes Mr. Madrid pain.
Mr. Madrid testified at trial that over time he has returned to many of his previous activities, but he stated that he “pays for it” afterwards because of the |4pain. Dr. Shackleton’s testimony that the injuries sustained in the fall has left Mr. Madrid with a 4% total body impairment supports Mr. Madrid’s statements that he continues to suffer with pain. Under this set of facts and circumstances, it is clear that the trial court’s general damages award of $100,000 was woefully low and an abuse of discretion.
Mr. Madrid had multiple injuries to different areas of his body, a surgery, and a 4% permanent total body impairment. The following jurisprudence gives some guidance in assessing a reasonable award for damages.
In Brown v. Beauregard Elec. Co-op., Inc., a case decided nearly 20 years ago, the Third Circuit affirmed an award of $250,000.00 for a 35-year-old man that suffered a T12 facture and bulging disc.[5] Mr. Brown’s inoperable compression fracture took approximately six months to heal.
In Jacobs v. City of Marksville, an award of $225,000.00 in general damages was not considered excessive for a plaintiff that complained of lower back pain and pain in both knees.[6] The plaintiff was given cortisone shots to reduce inflammation in his back and knees, and later underwent two knee surgeries. Also, this Court affirmed $60,000.00 in general damages for a knee injury that required an MRI and possibly a future surgery.[7]
An award of $22,500.00, for a fifteen-month shoulder injury with residual pain, was affirmed by the Fifth Circuit in Mayeux v. Selle.[8] Additionally, the ^appeals court in Olivier v. LeJuene, found that the lowest award for pre-existing spondylolis-thesis that became symptomatic was $50,000.00.[9]
This Court finds that Mr. Madrid offered credible testimony, describing both the injuries he suffered and his present physical state. Taking into consideration the nature of those injuries, the duration *901 and extent of his treatment and his young age, together with the above jurisprudence, this Court finds that a general damage award of $325,000.00 is the lowest reasonable award within the trial court’s discretion. Therefore, the award for past pain and suffering, mental anguish, and loss of enjoyment of life is increased to $200,000.00, and the award for future pain and suffering, mental anguish, and loss of enjoyment of life is increased to $125,000.00.

Second Assignment of Error

In this assignment of error, Mr. Madrid maintains that the trial court committed legal error by not applying the collateral source rule when awarding medical expenses. This Court reviews question of law under a de novo standard of review.
Mr. Madrid incurred medical expenses in the amount of $65,100.00. Louisiana Workers’ Compensation Corporation (LWCC) paid $27,159.25 to the medical providers. The trial court’s judgment awarded $27,159.25 in medical expenses. Thus, the trial court only held Eagle Control responsible for medical expenses paid by LWCC, rather than the full amount of Mr. Madrid’s medical expenses. Essentially, Eagle Control profited from a medical benefit personal to Mr. Madrid.
IfiThe collateral source rule is well-established in Louisiana jurisprudence and was thoroughly examined in Bozeman v. State.[10] In Bozeman, the Louisiana Supreme Court explained that:
Under the collateral source rule, a tort-feasor may not benefit, and an injured plaintiffs tort recovery may not be reduced, because of monies received by the plaintiff from sources independent of the tortfeasor’s procuration or contribution: Hence, the payments received from the independent source are not deducted from the award the aggrieved party would otherwise receive from the wrongdoer, and, a tortfeasor’s liability to an injured plaintiff should be the same, regardless of whether or not the plaintiff had the foresight to obtain insurance.[11]
The Bozeman Court discussed the tort and non-tort actions that the collateral source rule applies to, and reiterated the longstanding reasoning that the rule promotes tort deterrence. The issue raised in Boze-man, unlike in this case, was whether the rule could be applied to Medicaid write-offs. The Court ultimately determined that a plaintiff could not use the rule to recover Medicaid write-offs. However the Court’s ruling was limited, and in no way did the Bozeman decision diminish the collateral source rule’s application under other circumstances.
Additionally, Mr. Madrid cites to Davis v. Odeco, to support his position.[12] In Davis, like the instant case, claims were brought under 33 U.S.C. § 905(b) against a tortfeasor. The Davis Court, explained that even when third, parties pay the compensation for plaintiffs’ injuries, such payment should not have the effect of 17giving a windfall to tortfeasors.[13] Permitting tortfeasors to set-off compensation available to plaintiffs from collateral sources would allow them to escape bearing the *902 costs of their own conduct. Additionally, some courts emphasize that the collateral source rule prevents the deterrent effect of tort judgments from being undermined. Sources of compensation that have no connection to the tortfeasor are inevitably collateral.[14]
The trial court awarded $27,159.25 to the intervenors, LWCC, and no medical expenses to Mr. Madrid. Applying the collateral source rule in accordance with the relevant jurisprudence, Mr. Madrid is awarded $37,940.75 in past medical expenses.

Conclusion

Mr. Madrid’s general damage awards are amended to a total of $325,000.00 and he is further awarded $37,940.75 in past medical expenses.
AMENDED AND, AS AMENDED, AFFIRMED.
LOVE, J., concurs and assigns reasons.

. 00-492, p. 6 (La. 10/17/00), 774 So.2d 70, 74.

. Id.

. Id.

. Guillory v. Lee, 09-0075, p. 15 (La.6/26/09), 16 So.3d 1104, 1117.

. 94-0512 (La.App. 3rd Cir. 12/14/94), 647 So.2d 668.

. 06-1386 (La.App. 3 Cir. 3/7/07), 953 So.2d 139.

. Moody v. Cummings, 09-1233 (La.App. 4 Cir. 4/14/10), 37 So.3d 1054.

. 99-498 (La.App. 5 Cir. 11/10/99), 747 So.2d 1174

. 94-697 (La.App. 3 Cir. 11/13/96), 686 So.2d 55.

. 03-1016 (La.7/02/04), 879 So.2d 692.

. Id., p. 9, 879 So.2d at 698 (citations omitted); see also, Manderson v. Chet Morrison Contractors, Inc., 666 F.3d 373 (5th Cir.2012) (In tort actions, the collateral source rule prohibits a reduction of compensatory damages by the difference between the amount billed for medical services and the amount paid.).

. 18 F.3d 1237 (5th Cir.1994).

. Id., 18 F.3d at 1243-1244 (citing to Phillips v. Western Co. of North America, 953 F.2d 923, 930 (5th Cir. 1992)).

. Id.